UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KASEY L. YUHNKE
                                Plaintiff,

v.

                                                             **REPORT AND**
                                                             **RECOMMENDATION**

NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF THE               16-CV-001(LJV)(JJM)
SOCIAL SECURITY ADMINISTRATION,
                                Defendant.
_____

## INTRODUCTION

      Before the court are the parties' cross-motions for judgment on the pleadings [18, 22][2] which were referred to me for preparation of a Report and Recommendation [18]. For the reasons stated below, I recommend that the determination of the Acting Commissioner be affirmed.

## BACKGROUND

           Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on June 14, 2012 (T. 145, 155).[3] She alleges that she became disabled on April 1, 2010 due to dermatomyositis[4], depression and anxiety (T. 159). Her application was denied, and an administrative hearing was subsequently held before Administrative Law Judge ("ALJ") Bruce

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration ("SSA"). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2]  Bracketed references are to the CM/ECF docket entries.

[3]  References denoted as "T" are to the transcript of the administrative record.

[4]  According to Stedman's Medical Dictionary (28th Edition, 2006), dermatomyositis is a "progressive condition characterized by symmetric proximal muscle weakness with elevated serum levels of muscle enzymes and a skin rash, typically a purplish-red erythema on the face, and edema of the eyelids and periorbital tissue; affected muscle tissue shows degeneration of fibers with a chronic inflammatory reaction; occurs in children and adults, and in the later may be associated with visceral cancer or other disorders of connective tissue".

Mazzarella on October 16, 2013 (T. 25), at which plaintiff was represented by counsel. Plaintiff was 19 years old, 5'0" tall, and weighed 86 pounds at the time of the hearing (T. 32). She completed high school and one year of college (T. 34). She has no work history (T. 159) and lives with her grandmother in Las Vegas Nevada (T. 30-31).

On February 12, 2014, ALJ Mazzarella determined that plaintiff suffered from severe impairments including dermatonyositis, celiac disease, and low weight (T. 14), but she retained the residual functional capacity to perform light work because she could sit, stand or walk for an eight hour workday with only normal breaks and meal periods, can lift and carry 20 pounds occasionally and 10 pounds frequently (T. 15).

Plaintiff appealed ALJ Mazzarella's decision to the Appeals Council, which denied the request for review making the ALJ's February 12, 2014 determination the final decision of the Acting Commissioner (T. 1-4). Plaintiff thereafter commenced this action.

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well-settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. In this case, it is not disputed that: (1) plaintiff is not currently engaged in substantial

gainful activity; (2) plaintiff has at least one severe impairment that limits her mental or physical ability to do basic work activity; and (3) plaintiff cannot perform her past work. Plaintiff disputes ALJ Mazzarella's determinations at step three, that her dermatomyasitis fails to meet the Appendix 1 listings, and at step five, that she retains the residual functional capacity to perform work. Plaintiff's Memorandum of Law [18-1], pp. 10-11.

The plaintiff bears the burden of proof with respect to the step three determination (*see* Orton v. Astrue, 2013 WL 3328025, *10 (N.D.N.Y. 2013)); while the Acting Commissioner bears the burden of proof with respect to step five. See Talavera v. Astrue, 697 F.3d 145 (2d. Cir. 2012). In addition, plaintiff argues that she was denied a fair hearing due to preconceived bias on the part of ALJ Mazzarella. Plaintiff's Memorandum of Law [18-1], p. 9.

B.   ALJ Bias

Plaintiff asserts that ALJ Mazzarella demonstrated a "preconceived bias" against her. Plaintiff's Memorandum of Law [18-1], p. 9. She claims that he "interrupted [her], he answered the questions for her . . . , he talked down to her . . . and he interjected his opinions on a myriad of irrelevant subjects like being big enough to pitch or reality television". Id.

The Second Circuit has held that in order to show that an ALJ's bias resulted in the denial of a fair hearing in a social security case, the plaintiff must show that the ALJ exhibited a "deep-seated favoritism or antagonism that would make a fair judgment impossible". Whitfield v. Astrue, 476 Fed. App'x 408, 409 (2d Cir. 2012) *quoting* Reddy v. Commodity Futures Trading Commission, 191 F.3d 109, 119–20 (2d Cir.1999). A claimant's right to a full and fair hearing "is violated where a claimant is deprived of the opportunity to present evidence to an ALJ in support of his or her claim, or where the ALJ exhibits bias or animus against the

claimant." <u>Bordes v. Commissioner of Social Security</u>, 235 Fed.Appx. 853, 857–58 (3d Cir. 2007).

In his case, ALJ Mazzarella occasionally interrupted plaintiff's testimony or inserted his own words to complete her thoughts (T. 32, 35, 42), as illustrated in the following examples:

> Q: And apparently your weight is the result of what? Do you know?
> A: I have loss of muscle tone and I also –
> Q: Well, that's the result of the problem, but I don't know if that-- muscle doesn't usually way much.
> A: I also have Celiac disease. (T. 32)
> . . .
> Q: When I'm in a lot of pain, it's hard for me to –
> A: Concentrate, right? Okay. (T. 42)

At times, ALJ Mazzarella asked questions, or made comments, that were unrelated to the issue of plaintiff's disability. For example, he asked plaintiff how good she was as a softball player, and noted that "usually pitchers are a lot bigger than you" (T. 35). When plaintiff stated that she watched reality television, ALJ Mazzarella made several comments to the effect that "there's nothing real" about reality television (T. 46). He went on to state that these programs were "all contrived" and that they "set up the situations. They bring in people who are going to react badly so that you will watch it because it's interesting to see people behave badly". <u>Id.</u> He asked if she watched "the Bad Girls Club", calling it "one of the more disgusting ones that are out there" (T. 47). When asking her about her social activities, he stated: "The only reason why I mentioned that is you're an attractive young lady, I would've figured that you'd have some boyfriends or some people who'd be interested in you or girlfriends to hang around with" (T. 48).

Notwithstanding these comments, the transcript of the administrative hearing does not reflect that ALJ Mazzarella demonstrated a preconceived bias against plaintiff or that

plaintiff was denied a fair hearing. A similar claim was rejected in <u>Siravo v. Commissioner of Social Security</u>, 2017 WL 1246347, (D.N.J. 2017). There, the plaintiff argued that the ALJ interrupted him, took personal calls from family members during the hearing, and was "biased", "rude", "condescending", "impolite", "arrogant", "unprofessional", and "very annoying". <u>Siravo</u>, 2017 WL 1246347, *7. The court stated that the transcript reflected that the ALJ was "frustrated and impatient" with the plaintiff, but that "[n]othing in the record indicates that plaintiff was deprived of the opportunity to present evidence to the ALJ or that the ALJ exhibited bias against plaintiff". <u>Id.</u> *See also* <u>Fraser v. Astrue</u>, 373 Fed.Appx. 222, 225 (3d Cir. 2010) (rejecting argument that ALJ was biased because "[e]ven assuming, however, that the ALJ was rather brusque, there is no indication that there was any conflict of interest or inability to render a fair judgment").

      While the transcript in this case reflects that ALJ Mazzarella was, at times, condescending toward plaintiff and plaintiff's counsel (T. 40, 50), the record does not reflect that he possessed a preconceived bias against the plaintiff or that he was unable to render a fair judgment.

## C.    Residual Functional Capacity Assessment

      Plaintiff argues, albeit in conclusory manner, that ALJ Mazzarella "did not even discuss many pieces of evidence in [the] file nor mention what weight was given to them". Plaintiff's Memorandum of Law [18-1], p. 10. The record reflects that ALJ Mazzarella summarized much of the medical record (T. 16-18), and stated that he was giving "significant weight" to the opinion of Dr. Teresa R. Hennon, a pediatric rheumatologist who treated plaintiff with respect to her dermatomyositis (T. 18). Specifically, ALJ Mazzarella relied upon Dr. Hennon's January 25, 2013 residual functional capacity assessment to the effect that plaintiff

could lift up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally; she could sit, stand and walk eight hours at one time without interruption; and she had no limitations with respect to reaching, handling, fingering, feeling, pushing or pulling. (T. 448-452). Dr. Hennon further opined that plaintiff could "perform activities like shopping", travel without a companion, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climbing steps at a reasonable pace, prepare meals for herself, to care of personal hygiene, and sort, handle or use paper files (T. 453).

Plaintiff argues that she was "out of remission" and that her physician in Las Vegas referred her to a rheumatologist who ordered substantial testing shortly before the hearing. Plaintiff's Memorandum of Law [18-1], p. 10. Although plaintiff submitted medical records demonstrating that she was being treated by medical providers in Las Vegas (T. 515-524), plaintiff does not identify, and the documents (to the extent they are legible) do not reflect clinical findings or opinions which are inconsistent with those of Dr. Hennon or the other medical evidence in the record.

The residual functional capacity assessment by Dr. Hennon is consistent with her August 12, 2012 (T. 408) and October 8, 2012 (T. 458), and June 24, 2013 (T. 499-500) treatment notes. ALJ Mazzarella's determination in this regard is supported by substantial evidence. Plaintiff has not demonstrated that ALJ Mazzarella erred in relying upon Dr. Hennon's opinion, among other things, in making his residual functional capacity determination or assessing plaintiff's credibility with respect to the severity of her symptoms.

D.  **Appendix 1 Listings**

   Plaintiff asserts, also in conclusory manner, that if ALJ Mazzarella had conducted a "full and fair examination of the evidence", she would have been found to have met the Appendix 1 Listings for dermatomyositis under §14.05E because "it discusses repeated manifestations, and she has had marked limitations in her activities of daily living and social functioning". Plaintiff's Memorandum of Law [18-1], p. 11.

   The reports from plaintiff's treating physician, Dr. Hennon contradict plaintiff's assertion of marked limitations in her activities of daily living and social functioning (T. 408, 458, 499-500). Plaintiff has not cited to any specific medical evidence demonstrating that she meets the criteria set forth in §14.05E. Thus, plaintiff has not met her burden to demonstrate that she meets the Appendix 1 Listings based upon this record.

**CONCLUSION**

   For these reasons, I recommend that plaintiff's motion for judgment on the pleadings [18] be denied, and that the Acting Commissioner's motion for judgment on the pleadings [22] be granted.

   Unless otherwise ordered by District Judge Lawrence J. Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by January 23, 2018. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

   Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 9, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge